WELSBACH LIGHT CO. v. ELKINS et al.

(District Court, W. D. Pennsylvania. February 21, 1912.)

No. 52.

Patents (§ 328*)—VALIDITY AND INFRINGEMENT—GAS LAMP SHADES.

The Litle patent No. 961,504 for a globe or shade for inverted gas lamps, having a metal neck for attaching the glass shade to the fixture to prevent its being broken by the extreme heat, discloses patentable invention; also *held* infringed.

In Equity. Suit by the Welsbach Light Company against Stephen F. Elkins, the Manufacturers Sales Company, and the Krakno Glass Company. Decree for complainant.

Bakewell & Byrnes, for complainant.

Joseph M. Nesbit, for defendants.

BUFFINGTON, Circuit Judge. This patent case turns wholly on questions of fact, and such facts fall within comparatively narrow limits. By using an inverted electric light enveloped in a bulb, it became possible to throw its light downward unobstructed. When an attempt was made to do this with inverted gas burners, and especially with those of the Welsbach type in which a Bunsen burner is used, it was found the intense heat shattered the inverted glass shade. This was due, not only to the fact that the sustaining collar part of the globe had to be made of heavier glass than the main body, but also to the additional fact that, when the lower part of the shade was ribbed in order to reflect the light, the making of those ribs made the resistance power of the glass different. The effect, therefore, of the varying resistance power of the heavy collar and the thinner shade, and between the ribs and other parts of the shade, resulted in shattering the globes. Assuming it questionable whether the causes recited above really had such effect, there can be no question that shattering was the result. The testimony of Mr. Stites, the general manager of the Welsbach Company, viz.:

"When the inverted burner was first put on the market, the necessity of a shade with projections for acting on the light was quite apparent, and we at once began experimenting, endeavoring to find a shade of this character that would stand the heat conditions under which it was called upon to stand on the inverted lamp. There was a large number of samples submitted to us, and I distinctly recall that on one occasion, in placing six of these samples on lamps on the test bar in my office, that the whole six cracked in one form or another immediately on lighting"

—is supported by that of Hoard (page 361 of record), Hill (page 388), Lawlor (page 332), Snyder (page 448), and several other witnesses whose testimony need not be referred to, since there is no contradiction. This breakage was overcome by one Litle by means of the simple device described in his patent. The difficulties of the old art, and how he overcame them, are described in his testimony as follows:

"I have been directly interested in the development of incandescent gas burners since January, 1898. On January 1, 1903, I entered the employ of

the Welsbach Company. Since that time I have been actively engaged in developing all of the various devices which in any way pertain to gas lighting and which have been marketed by the Welsbach Company since 1903. * * * After developing the 'inverted gas burner and working out the various problems met with in the various kinds of gas which are manufactured in America, I turned my attention to the better distribution of light from an inverted burner. The electrical people at that time were meeting with considerable success in the use of glass reflecting shades of the prismatic type. The prisms were formed by pressing. I tried to use some of these same shades, or rather shades of the same general type, having the same form of prisms, but equipped with a glass neck approximately 3⅜ inches in diameter at its out-turned portion. but found that these shades, while they were perfectly satisfactory when used in connection with electric lamps, in which there was very little local heating of the neck portion, invariably cracked when used on an inverted incandescent gas burner. My next move was to ascertain whether or not it would not be practical to especially anneal these shades to prevent this breakage. Especially or double annealed shades were procured, but still the breakage occurred. This was a very discouraging state of affairs, for I realized that the electrical people were walking away with a very large share of the lighting which I believed naturally belonged to the gas people, on account of the greater economies effected by the use of gas for illumination. I observed that, when the breakage occurred on one of these glass necked prismatic shades, the break invariably started from the top immediately at or very close to one of the binding screws which retain the shade in the burner. I first thought that the breakage was caused by having the screws bound too tightly against the glass; but after experimenting I found that the breakage still occurred, even when the screws were not set up so tightly, but the breakage in this latter case was not so pronounced. The problem, as I saw it, was to reduce the temperature at the upper end or neck portion of the glass shade. After a great many experiments with a view of eliminating this breakage, it occurred to me that the proper thing to do would be to entirely eliminate the glass neck and substitute one made from metal, because such a construction would remove the glass to a safe distance from the source of heat, and at the same time allow the glass shade with its attached metal neck to be retained in the same burner and by the same screws that were previously used with the glass neck. While I made various shapes of metal necks in my early experimental work, I very soon found that the one which I afterwards patented would be commercially satisfactory. The first necks I made from brass, but later I made them from sheet steel, so that it would be perfectly feasible to supply the neck mounted in a glass shade without too greatly increasing the cost of same. The problem as I saw it was to utilize the highly efficient prismatic reflecting shades for use on incandescent gas burners; and the fact that the metal neck shades have been so largely used and recommended by the best illuminating authorities in the country, and also that they are now being imitated, leads me to believe that my invention was entirely practical and of great value."

On his device Litle obtained the patent here in question, No. 961,-504, granted June 14, 1910, for a globe or shade for gas lamps, and of which device the first claim, viz.:

"1. As a new article of manufacture, a glass globe or shade having integral projections for acting upon the light rays, and a metal neck secured within the upper hole of the shade and an outwardly extending flange on the upper portion of the neck adapted to be engaged by shade holding members of a burner, substantially as described"

—may be taken as illustrative.

We have carefully considered the prior art, and find no shade which disclosed Litle's device or overcame the difficulty under which the prior art labored. The shades of the electric light art, by reason of

the fact that no heat problem was there involved, did not aid in solving the inverted gaslight problem. We therefore find Litle's patent is valid.

As to infringement, it suffices to say that while the respondent's structure—on which a patent was obtained—may embody some additions to and improvements over complainant's shade, yet it nevertheless combines all the elements of the patent's claims to substantially accomplish the same result in substantially the same way.

Let a decree be prepared in accordance herewith.